The mortgages, to foreclose which this action was brought, were executed prior to the enactment by congress, in 1862, of the act known as the legal tender act, to secure the payment by the mortgagor to the mortgagee of the sum of $7,000, according to the condition of certain bonds, bearing even date with the mortgages. The time for the payment of the mortgage debt was subsequently extended, by an agreement between the parties, to the 1st day of March, 1870, and on that day the defendant Jex, who had become the grantee of the mortgaged premises by a conveyance which in terms was made subject to the mortgages, but which contained no covenant on his part to pay them, tendered to the plaintiff, to whom the bonds and mortgages had been assigned, the amount of the mortgage debt in United States legal tender notes in satisfaction of the mortgages. The plaintiff refused to accept them on the ground that she was entitled to payment in gold or in its equivalent in currency. This action was then brought, and *Page 423 
the only question presented upon the record is whether the tender discharged the lien of the mortgages.
The case of Kortright v. Cady (21 N.Y., 343) is relied upon by the defendant as decisive of the question in his favor. In that case the defendant Cady was the grantee of the equity of redemption under a full covenant warranty deed, which purported to grant the whole estate, and which made no mention of the mortgage. He tendered to the plaintiff, after suit commenced to foreclose the mortgage, the amount of the mortgage debt with costs, which was refused, and set up in his answer the tender in bar of the further maintenance of the action. It was held that the tender discharged the lien of the mortgage, although there was no averment of a readiness to pay the debt, and the money was not brought into court. We deem it unnecessary to consider whether there is such a distinction between the facts in this case and those which appeared in Kortright v. Cady as to call for the application of a different rule in respect to the legal effect of the tender made by the defendant from that applied in that case. The legal tender act by its terms made the notes authorized to be issued under it lawful money and a legal tender in payment of all debts, public and private, within the United States, with certain exceptions not necessary to be noticed. The Supreme Court of the United States in Hepburn v. Griswold (8 Wal., 605), determined that the act, so far as it related to debts existing at the time of its passage, was in violation of the Constitution of the United States, and was void. The court declared that contracts for the payment of money made before that time were in legal effect contracts for payment in coin, and that Congress could not compel a creditor to accept legal tender notes in payment of a debt antecedently created. The tender made by the defendants was made after the decision in Hepburn v. Griswold
had been pronounced, and before its reversal by the case ofKnox v. Lee (12 Wal. 457).
It is insisted on the part of the defendant that notwithstanding *Page 424 
the fact that at the time the tender was made the Supreme Court of the United States, the ultimate judicial authority on all questions arising under the Constitution and laws of the United States, had decided that the legal tender act, so far as it applied to debts like that of the plaintiff, was void, and that he was entitled to demand payment of his debt in coin, yet he was bound to know the law to be as it was subsequently declared, and that a refusal to accept the tender involved the loss of his security. I think the law did not impose upon the plaintiff so unreasonable a burden. The claim is sought to be justified by the maxim, ignorantia juris non excusat, the reason of which is stated by Lord ELLENBOROUGH, in Bilbie v. Lumley (2 East, 469), to be, that otherwise there is no saying to what extent the ignorance might not be carried, and that it would be urged in almost every case. The reason of the rule has no application to a case like this. The plaintiff had a right to repose upon the decision of the highest judicial tribunal in the land. It was, as applied to the relations between these parties and to this case, the law, and not the mere evidence of the law. Respect for the decisions of courts is a duty inculcated by writers upon the law, and enforced by considerations of public policy. It is said by Kent (1 Com., 476): "If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness, and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it." The transactions of life would be involved in great and distressing perplexity and uncertainty, if the maxim quoted is to be applied and extended to cases like this. It is provided in this State by statute (2 R.S., 624, § 66) that every act done in good faith, in conformity with a construction by the Supreme Court of any penal or other statute, after such decision was made and before reversal by the Court for the Correction of Errors, shall be so far valid that the party doing *Page 425 
said act shall not be liable to any penalty or forfeiture therefor.
In the absence of a statutory provision covering this case, I am of opinion that the same equitable principle should be applied as is contained in the statute cited, and that it should be held that the tender by the defendant did not discharge the lien of the mortgage, it being insufficient according to the law as then declared.
If the tender had been kept good, the defendant might have been discharged from the payment of interest and costs.
The judgment should be affirmed, with costs.
All concur.
Judgment affirmed.