THE CHENANGO BRIDGE COMPANY, PLAINTIFF, *v.* CLINTON F. PAIGE AND FREDERICK LEWIS, SURVIVING EXECUTORS OF HAZARD LEWIS, DECEASED, DEFENDANTS.

*Decision of "highest tribunal" — acts done under — protection against penalty or forfeiture therefor.*

The Binghamton Bridge Company having, in 1855, erected a bridge over the Chenango river, at Binghamton, within eighty rods of plaintiff's bridge, the plaintiff in 1856 commenced an action to enjoin it from collecting toll thereon, on the ground that, by its charter, no bridge could be erected within two miles of the one previously erected by it. The plaintiff was defeated at the Circuit, and the judgment affirmed at the General Term and by the Court of Appeals, but subsequently reversed by the Supreme Court of the United States.

In 1865 the Binghamton Bridge Company's bridge being carried away by a freshet, struck and carried away plaintiff's bridge. Plaintiff brought this action to recover the tolls unlawfully diverted from it by the other bridge, and damages arising from its bridge being carried away. Defendant maintained that our courts having sustained the validity of the statute incorporating the Binghamton Bridge Company, defendants' testator was protected by 2 Revised Statutes, 602, although the decision of our courts had since been overruled.

*Held,* that this was not so for the reason: first, that the bridge was not built after any decision of our courts had given a construction to the act; and, second, that the recovery of damages by reason of the loss of toll was not a penalty or forfeiture.

*Held,* further, that the principle laid down in *Harris* v. *Jex* (55 N. Y., 421), that a person had a right to rely upon the decision of the highest tribunal of the land upon any question, and was not bound to foresee that it would be reversed, was not applicable, as the decision of the Court of Appeals was not the decision of the highest tribunal of the land, upon the matter involved.

Motion for a new trial on exceptions ordered to be heard in the first instance at the General Term.

This action was brought to recover for damages occasioned by the erection of a bridge across the Chenango river at Binghamton, by the Binghamton Bridge Company. The plaintiff was incorporated by chapter 89, Laws of 1805, and authorized to build a bridge across the Chenango river at Binghamton. The act declared " that it shall not be lawful for any person or persons to erect any bridge * * * within two miles either above or below " plaintiff's bridge. The plaintiff built and maintained the bridge until it was swept away in 1865. In 1855 an act was passed incorporating the Binghamton Bridge Company, and authorizing it to construct a bridge across the Chenango river at Binghamton, at a point not less than eighty rods from the plaintiff's bridge.

The defendants' testator, Hazard Lewis, became a stockholder in the Binghamton Bridge Company, was always a director in it, was at times its president, and as a contractor built their bridge, and under their direction did some repairs on it as late as 1862, and died the 2d day of July, 1863; and the defendants, as executors of his will, qualified on the 15th of July, 1863.

Plaintiff notified Hazard Lewis that it " would hold him, the said Hazard Lewis, personally responsible for the erection of such a bridge and for all the consequences thereof." In May, 1856, plaintiff brought an action against the Binghamton Bridge Com-

pany to enjoin it from constructing and using its bridge, and from collecting tolls, and for damages.

The action was tried at Special Term before Mr. Justice GRAY, who dismissed the complaint in January, 1858, and thereon judgment was entered March, 1858, which was affirmed on appeal by the General Term and Court of Appeals. A writ of error was then brought, taking the case to the Supreme Court of the United States, in which court the judgments were reversed in December, 1865, and the cause remanded to the Supreme Court, with directions to enter judgment for plaintiff, etc.

A new trial was had before Mr. Justice BOARDMAN, who, in November, 1866, rendered a decision granting the prayer in plaintiff's complaint, with damages. Defendant appealed from this decision to the General Term in January, 1867, where Judge BOARDMAN's decision was affirmed, and final judgment in that action was entered in favor of plaintiff against the Binghamton Bridge Company, November 19, 1867.

After the said Lewis' death, and in the same year, the plaintiffs took down their bridge and rebuilt it in the year 1864.

The bridge of the Binghamton Bridge Company was swept away by the flood of 1865, and was carried by the stream against the plaintiff's bridge, and that was carried along with it.

This action, commenced on the 23d day of March, 1869, was brought to recover the tolls diverted from the plaintiff's bridge, and for the loss of the bridge itself.

One trial was had and plaintiff recovered against these defendants, but a new trial was granted by the General Term in this department (see 63 Barb., 111), on the ground that improper evidence was admitted. A retrial was had, when plaintiff again succeeded.

*Chapman & Martin*, for the plaintiff.

*Giles W. Hotchkiss*, for the defendants.

LEARNED, P. J. :

This cause has already been once before this court, and the decision is reported 63 Barbour, 111. A majority of the court seem

to have then held that the plaintiff might maintain both causes of action, set forth in the complaint. We are bound by that decision, which was followed by the learned justice who last tried the cause. If we were not, I should adopt the views of Mr. Justice PARKER in his dissenting opinion. The right of riparian owners to construct such a bridge is not disputed. It was the permitting of the same to be used by the public, free or for toll, which was held to violate the plaintiff's rights. (*The Binghamton Bridge*, 3 Wall., 51.) But the construction, which was lawful, not the use, which was unlawful, contributed to the destruction of plaintiff's bridge.

I understand that the majority of the court also held that Lewis (and therefore his estate), was liable for what the corporation did, or for what he did, as its agent, in constructing the bridge, and was also liable for the loss of tolls which the plaintiff suffered through the illegal use of the bridge by the corporation which owned it. That decision concludes us, although I cannot assent to the doctrine.

One point is made by the defendants which was not presented to the court on the former argument. That is, " that the construction of their statutes by our own courts having sustained the position and conduct of the Binghamton Bridge Company, defendants' testator is protected, although the decision of our courts has since been reversed." To support this the defendants cite 2 Revised Statutes (§ 1 [66], part 3, title 3, art. 1 [m. p.], 602). But the building of the bridge was not *after* any decision of the Supreme Court giving construction to the act. And the recovery for damage by reason of the loss of the tolls cannot be called a *penalty* or *forfeiture*.

The defendants further urge that the principle decided in *Harris* v. *Jex* (55 N. Y., 421), applies. In that case it was held that where the highest tribunal in the land has decided a question, a person had a right to repose on such decision; that he was not bound to foresee that the same tribunal would reverse its decision the next year. But, in the present case, the highest judicial tribunal in the land has never decided that the Binghamton Bridge Company had a right to maintain a public bridge, or to take toll. That question was in dispute, at all times, from the commencement of the former suit in May, 1856, to the decision of the United

States Supreme Court, in December, 1865. On the point involved the Court of Appeals was not the highest tribunal.

Again, in the present case the plaintiff seeks to recover for the tolls which it ought to have received, and which were in fact received by the Binghamton Bridge Company. The latter ought not to retain the benefit of its own unlawful act. But in *Harris* v. *Jex* the defendant endeavored to defeat the foreclosure of a mortgage by proof of a mere tender of the amount in national currency, made at a time when, by the decision of the United States Supreme Court, only gold was a legal tender, under the circumstances of that case. So that if a retroactive effect had been given to the subsequent reversal by that court of its own decision, the plaintiff would have lost the lien of his mortgage without receiving payment of his debt, under the harsh rule of *Kortright* v. *Cady* (21 N. Y., 343).

Following, as we are bound to do, the former decision of this court, we are compelled to deny the motion for a new trial and to order judgment on the verdict, with costs.

Present — LEARNED, P. J., and BOCKES, J. BOARDMAN, J., not acting.

Motion for new trial denied and judgment ordered for plaintiff on verdict, with costs.