(40 Misc. Rep. 585.)

### SAUER v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County.   May, 1903.)

1. MUNICIPAL CORPORATIONS—VIADUCT IN STREET—DAMAGES.
  Where a city, under a statute, erected a viaduct in a street of which it owned a fee, it is a lawful erection, and an abutting owner who has thereby suffered consequential damages can recover none of the city.

Action by George W. Sauer against the city of New York for damages through the erection of a viaduct adjacent to the premises of plaintiff.   Judgment for defendant.

Abraham I. Elkus, for plaintiff.

George L. Rives, Corp. Counsel (Edward T. McGuire, of counsel) for defendant.

BISCHOFF, J.   The fact that the viaduct, as to the maintenance of which the plaintiff complains, was constructed in accordance with the statute authorizing this particular work, is admitted, as is also the fact that the defendant owns the fee of the street; and the question which the record presents is whether this abutting owner has suffered a legal injury through a partial deprivation of the enjoyment of easements of light, air, and access by reason of the presence of an elevated structure erected over the street for the passage of wagons and pedestrians, in accordance with legislative authority, to facilitate public travel upon the highway.

That a property owner who suffers a consequential injury through the work of improvement in a public street, conducted under lawful authority, must bear his loss as an incident to the welfare of the community, was early declared (Radcliff's Ex'rs v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357), and lately reaffirmed (Fries v. New York & Harlem R. Co., 169 N. Y. 270, 62 N. E. 358).   The theory upon which compensation is awarded to owners of property abutting upon the line of the elevated railway, for a taking of their easements, has its foundation in the pronouncement of the courts that the railway's use of the

street was not a "street use"—a term used to define a judicial limitation upon the general power of the state to devote the highways to uses for the best interests of the public. The abutting owner cannot object if his street easements are taken for a public purpose, because such property rights as he may have, in this aspect, are subject to the superior rights of the public; and it is only where, as in the case of the elevated railroad, the public use is not a "street use," that a property right is infringed by the taking of the easements.

As to public uses of the street generally, the rule has been stated to be that:

"When no private interests are involved or invaded the Legislature may close a highway, and relinquish altogether its use by the public, or it may regulate such use, or restrict it to peculiar vehicles or to the use of particular motive power. It may change one kind of public use into another, so long as the property continues to be devoted to public use. What belongs to the public may be controlled and disposed of in any way which the public agents see fit. * * * As long as the use to which a highway or any other public property or right is to be applied or transferred is a public use, it is a matter of discretion in the Legislature to permit its application or transfer, and the people must question their action elsewhere than in the courts." People v. Kerr, 27 N. Y. 188–192.

That a public improvement in the street, in the nature of a change of grade, does not invade private interests, notwithstanding its effect upon the value of the abutting owners' property in diminishing the enjoyment of their easements of light, air, and access, is the settled rule in this state (Radcliff's Ex'rs v. Mayor, supra); and it is only where the public improvement is a "nonstreet use," as in the elevated railway cases, that the courts have found in the consequential loss of the easements a "taking" of property, for which, under the Constitution, compensation must be made. Raising the level of a street by means of a viaduct for strictly street purposes results in no subjection of the street to a "nonstreet use," and the situation lacks the main element which made a recovery in the elevated railway cases possible. Demarest, El. R. Law, 28–31.

That the doctrine of the elevated railway cases is not to be extended is apparent from the recent decisions of the Court of Appeals in relation to the claim for damages made by abutting owners whose easements had been interfered with through the erection of a viaduct for the use of a railway in Park avenue. Public necessity called for the raising of the grade of this railway (originally in the street and using a depressed cut), and the erection of a viaduct was held by the majority of the court to be within the rule which denies a recovery of damages for consequential injuries caused by the change of the grade of a street. Fries v. New York & Harlem R. Co., supra.

Furthermore, the elevated railway cases have been distinguished from the Park avenue cases upon the ground that the former did not involve an "attempt to improve the street for the benefit of the public" (Muhlker v. New York & Harlem R. Co., 173 N. Y. 549, 66 N. E. 558; Parker, C. J.)—a distinction which can only serve to eliminate from the case before me the theory of property damage

applied in the elevated railway cases, and which serves as the sole support for the plaintiff's cause of action.

The Fries and Muhlker Cases are directly inconsistent with the intimation of Sauer v. Mayor, 44 App. Div. 305, 60 N. Y. Supp. 648, that the interference with the plaintiff's easements is a "taking" of property, and that this viaduct is not a change of grade, within the rule of Radcliff's Ex'rs v. Mayor; and I find no escape from the conclusion that these later cases have overruled this decision of the Appellate Division, upon which the plaintiff relies. ·

It cannot be doubted that this viaduct was constructed wholly for the benefit of the public, in affording a necessary means of access between the high level of St. Nicholas Place and the westerly end of Macomb's Dam Bridge. For the purpose of making a grade which would give this means of access, the city could have made a solid embankment upon the bed of 155th street, and, within established rules, the plaintiff could not complain. The viaduct, by leaving the surface of the street as it was, accomplishes the public purposes involved with much less injury to abutters, and, failing the application of the rule which obtains in the elevated railway cases, there is no room for a logical argument which can place this case without the damnum absque injuria doctrine of Radcliff's Ex'rs v. Mayor. See, also, Uline v. N. Y. C. & H. R. R. Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661. That the erection of a viaduct to carry the street at a higher level, for the benefit of the public, is a "street use," within the principles of the change of grade cases, and is not a "taking" of property, under the elevated railway decisions, was held in Selden v. City of Jacksonville (Fla.) 10 South. 457, 14 L. R. A. 370, 29 Am. St. Rep. 278, in an opinion which contains an exhaustive review of the authorities, and proceeds upon persuasive reasoning.

My conclusion is that the plaintiff's loss results from a situation common to all property owners who may be affected by a public improvement, and that he cannot hold the city liable, nor can he assail, as unconstitutional, the statute which provides for the improvement without compensation to him. There should be judgment for the defendant upon the merits, but without costs.

Judgment for defendant, without costs.