CHARLES H. DAUCHEY COMPANY, INC., Plaintiff, *v.* JOSEPH E. FARNEY and JOSEPH A. FARNEY, Defendants.

(Supreme Court, Lewis Trial and Special Term, December, 1918.)

Statutes — effect of a decision of the Court of Appeals interpreting — when sale of stock of merchandise in bulk violated no provision of either the Federal or State Constitution — Personal Property Law (Laws of 1914, chap. 507), § 44.

> A decision of the Court of Appeals until reversed or overruled is a reliable basis for business dealings.
>
> In *Wright* v. *Hart,* 182 N. Y. 330, decided in October, 1905, it was held that chapter 528 of the Laws of 1902 relating to a sale of a stock of merchandise in bulk, was unconstitutional in that it violated both the Federal and the State Constitution imposing arbitrary restrictions upon the liberty of contract. In *Klein* v. *Maravelas,* 219 N. Y. 387, decided in December, 1916, it was held, overruling the decision in the *Wright* case, that section 44 of the Personal Property Law (Laws of 1914, chap. 507) which substantially re-enacted the aforementioned statute of 1902, violated no provision of either the Federal or State Constitution and was valid. *Held,* that until the decision in the *Klein* case, the *Wright* case, in so far as it determined questions other than a construction of the Federal Constitution, expressed the law of this state and that parties selling and buying merchandise in bulk had a right to rely thereon.

COMPLAINT was based upon section 44 of the Personal Property Law (Laws of 1914, chap. 507),

and alleged that the defendant Joseph E. Farney sold to the defendant Joseph A. Farney a stock of merchandise and fixtures in bulk, and alleged the defendants' non-compliance with the said statute, and demanded the appointment of the defendant Joseph A. Farney as receiver for the benefit of the plaintiff and all other creditors similarly situated.

Perry G. Williams, for plaintiff.

George S. Reed (Frank Bowman, of counsel), for defendant Joseph A. Farney.

Ross, J.    The defendant Joseph E. Farney about April 1, 1914, at Lyons Falls, N. Y., opened a retail hardware store.    The business was commenced principally upon capital or credit furnished by his father, the defendant Joseph A. Farney.    In January, 1916, several judgments had been obtained against the defendant Joseph E. Farney, and levies had been made upon the stock of goods in his store, and on the twenty-fourth of said month the defendant Joseph E. Farney executed a bill of sale to Joseph A. Farney of his entire stock of goods, fixtures and book accounts. At the time of said sale the defendant Joseph A. Farney and his attorney, Frank Bowman, obtained from the defendant Joseph E. Farney, a statement of what purported to be a complete list of the creditors of the said Joseph E. Farney; he, however, omitted from such list a number of creditors and with others the plaintiff herein.    At the time of said sale the defendant Joseph A. Farney furnished sufficient money to pay all the claims existing against the defendant Joseph E. Farney of which he had knowledge, and the said claims were paid.    Subsequently the defendant Joseph A. Farney took possession of

the store and the goods in question and sold the same, sustaining in his dealings with his son, the defendant Joseph E. Farney, a considerable loss.

On March 7, 1916, the plaintiff obtained judgment in Justice Court against the defendant Joseph E. Farney for sixty dollars and thirty-nine cents, a transcript was docketed, execution issued and returned unsatisfied on April 26, 1916.

The evidence given by the defendant Joseph A. Farney upon the trial was apparently for the purpose of showing on the part of said defendant a substantial compliance with the provisions of the act in question. I find, with some hesitation, that there was a failure to comply with the provisions of said act; and it is also proper in this connection to state that while the complaint is broad enough to constitute an ordinary creditor's bill the evidence failed to show want of consideration or fraud. So that the plaintiff's claim, and the defendant's claim as well, must rest solely upon the rights of the parties on January 24, 1916, under the act in question.

Incidentally a question of pleading is presented. The plaintiff states in its complaint " That neither prior nor subsequent to said sale did the defendant Joseph E. Farney, or the defendant Joseph A. Farney, or both of them, comply with section 44 of article 3 of the Personal Property Law of New York State, being chapter 45 of the Laws of 1909, and chapter 41 of the Consolidated Laws of the State of New York."

The above reference correctly describes the amended Laws of 1914 excepting that the pleader has inadvertently stated " Being chapter 45 of the Laws of 1909." The clause last referred to may be rejected as surplusage. The case was tried upon the theory that the sale was either valid or void and the plaintiff asked for the appointment of one of the defendants as

receiver, which provision first appears in the act of 1914.

A reference to the several acts of the legislature in reference to the sale of merchandise in bulk and the decisions thereunder is essential to an understanding of the questions involved.

Chapter 528 of the Laws of 1902 enacted that a sale of a stock of merchandise other than in the ordinary course of trade, in the regular and usual prosecution of the seller's business, or the sale of an entire stock of merchandise in bulk, " shall be fraudulent and void as against the creditors of the seller, unless the seller * * * " complies with a number of conditions which are specifically set forth in said act, which conditions are based upon a plan to give notice to the creditors of the seller of such proposed sale. This act was held in the case of *Wright* v. *Hart,* 182 N. Y. 330, decided October, 1905, to be unconstitutional in that it violated both the Federal and State Constitution imposing arbitrary restrictions upon the liberty of contract. After the decision of the *Wright* case the validity of similar statutes was upheld in two cases by the United States Supreme Court: *Lemieux* v. *Young,* 211 U. S. 489, under a Connecticut statute, decided in January, 1909, and *Kidd, Dater & Price Co.* v. *Musselman Grocery Co.,* 217 id. 461, under a Michigan statute, decided in May, 1910. Those decisions only determined that the laws under review were not repugnant to the Fourteenth Amendment of the Federal Constitution " because wanting in due process of law and denying equal protection of the laws." And this left still undecided the correctness of the decision in *Wright* v. *Hart* as to whether there was any conflict in the act of 1902 with our State Constitution. See opinion of Cardozo, J., *Klein* v. *Maravelas,* 219 N. Y. 385.

Chapter 528 of the Laws of 1902 was amended by Laws of 1904, chapter 569, which amendment act provided that such sale " will be presumed to be fraudulent and void as against the creditors of the seller." This latter provision was re-enacted by Laws of 1907, chapter 722, also Laws of 1909, chapter 45, which also repealed Laws of 1902, chapter 528. The last word of the legislature was Laws of 1914, chapter 507, being section 44 of the Personal Property Law, which substantially in this regard re-enacted Laws of 1902, chapter 528, and provided that such sale " shall be void as against the creditors of the seller," etc. Under the act last cited, the Court of Appeals in the case of *Klein* v. *Maravelas,* 219 N. Y. 383 (December, 1916) held that the act in question is a valid enactment and violates no provision of either the Federal or State Constitution and overruled the case of *Wright* v. *Hart.*

In so far as the effect of a sale of merchandise in bulk is concerned there are no essential differences in the act of 1902 and the act of 1914. See opinion Cardozo, J., in *Klein* v. *Maravelas,* 219 N. Y. 387, in which the learned judge said: " The present statute is similar in essentials to the one condemned in 1905. In details it may be distinguished from the earlier one, but the details are in reality trifling. We cannot without a sacrifice of candor rest our judgment upon them."

What was the law of this state in regard to the sale of merchandise in bulk after the rendition of the decision of the Court of Appeals in *Wright* v. *Hart,* in October, 1905, and until the decision of the Court of Appeals in *Klein* v. *Maravelas* in December, 1916, had parties selling and buying merchandise in bulk during said time the right to rely on the case of *Wright* v. *Hart,* or did they take the hazard that the principle of said case might be modified or impaired by subse-

quent acts of the legislature of the state, or by subsequent decisions either of its Court of Appeals, or of the Supreme Court of the United States? The question in the instant case is whether a decision of our Court of Appeals, though subsequently reversed by the same court, affords until such reversal " a reliable basis for business dealings."

The claim of the defendants is that the decision of the Court of Appeals in *Wright* v. *Hart* (1905) became and henceforth was the law of this state in so far as it determined questions other than a construction of the Federal Constitution until the overruling decision of *Klein* v. *Maravelas* in December, 1916, and that the defendants in making the sale in question relied upon and are protected by the decision in *Wright* v. *Hart.*

Opposing theories are presented whether the law is a complete and existing entity which is merely interpreted by the courts, which interpretation may be incorrect, or whether the law is as stated by Alexander Lincoln in a leading article in 21 Harvard Law Review (1908) page 120, on page 128: " The law as an abstract entity is in truth nothing more than the sum of all the sources of the law actually in existence, together with the potential changes and additions which may occur from future legislative enactments and judicial decisions."

The former theory is apparently supported by Justice Story in the case of *Swift* v. *Tyson,* 16 Pet. 1 (1842), as appears in the following quotation at page 18: " In the ordinary use of language it will hardly be contended that the decisions of courts constitute laws. They are, at most, only evidence of what the laws are, and are not of themselves laws. They are often re-examined, revised and qualified by the courts themselves, whenever they are found to be either defective or ill-founded, or otherwise incorrect."

The learned justice in writing the foregoing quotation was considering to what extent the 34th section of the Judiciary Act of 1789, chapter 20, furnished a rule obligatory upon the Supreme Court of the United States to follow the decisions of state tribunals in all cases to which they apply, and the above language was used by way of illustration and argument, and the conclusion reached in that case was to limit the obligation of that court in following the decision of state tribunals strictly to the interpretation of local usages.

The former theory was also held by no less authority than the Commentator Blackstone (1 Black. Com. *70) to the effect that a decision is only a more or less successful attempt to discover and state what the law is. See note 29 Harvard Law Review, 80.

This theory is stated by Surrogate Fowler in *Matter of Tod,* 85 Misc. Rep. 298: " It is for this reason, among others, that the common law assumes that the last decision of a final tribunal expresses the correct rule always latent in the bosom of the common law. Thus it is that the final judgment of a court of last resort is, as it were, antedated, and in the common law system such last judgment is assumed to have been true all along. This is the established principle pursuant to which I am fortunately compelled to approach the solution of all these important matters now before me." See James C. Carter's work " Law, Its Growth, Origin & Function."

The doctrine that a decision of a court is the law itself and therefore is a continuing rule of conduct upon which trust may be placed until fair notice is given that not it but another rule shall prevail in the future receives the sanction of Sir Henry Maine. Maine Ancient Law, chap. 2. See article of Wilbur Larremore " Stare Decisis and Contractual Rights," 22 Harvard Law Review, 182. Also article of Mr.

Lincoln to which reference has been made (21 Harvard Law Review, p. 129), in which he uses the following language: " Instead, then, of being a complete and unchangeable body or entity, law is something incomplete and imperfect, but containing a wonderful power for adaptability and growth. It is true that law in the abstract can be applied to every case, since every case must be decided. The conclusion is not, however, that law is already complete, but that law is made in order to decide the case. The system is complete because of the fact that judges can and do make law, and so the system can be applied to all possible new circumstances. Judges do not enact laws as a Legislature does, nor do they act arbitrarily, but they do make laws indirectly in the course of giving their decisions, and since they must decide a case in one way or the other, they cannot avoid so doing."

In *Ohio Life Ins. & T. Co.* v. *Debolt,* 16 How. (U. S.) 416–432 (1853), on page 432, Chief Justice Taney uses the following language: " Indeed, the duty imposed upon this court to enforce contracts honestly and legally made, would be vain and nugatory, if we were bound to follow those changes in judicial decisions which the lapse of time, and the change in judicial officers, will often produce.   *   *   *   And the sound and true rule is, that if the contract when made was valid by the laws of the state, as then expounded by all the departments of government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the Legislature of the state, or decision of its courts, altering the construction of the law."

*Gelpcke* v. *City of Dubuque,* 1 Wall. 175 (1863), was a case which involved the question of the validity of certain bonds issued by a municipality to aid in the construction of railroads extending beyond the limits of

such municipality. It appears the courts of Iowa uniformly sustained the validity of these bonds, which decisions were rendered between 1853 and 1859, which period covered the time of the controversy in this case; but that subsequently a case in the state of Iowa (*State of Iowa* v. *Wapello,* 13 Iowa, 390) overruled the earlier adjudication and which case stood, as stated by Mr. Justice Swayne, who delivered the opinion of the court, on page 206: "in unenviable solitude and notoriety." And the learned justice (p. 206) used the language of Mr. Justice Taney in the *Debolt* case above quoted. And it was held that the fact that the Supreme Court of Iowa now holds the former decisions of the courts of that state were erroneous and ought not to have been made can have no effect upon transactions in the past however it may affect those in the future.

*Harris* v. *Jex,* 55 N. Y. 421 (1874), was an action to foreclose a mortgage given prior to 1862, the time of the passage of the Legal Tender Act by Congress. On the 1st day of March, 1870, the defendant, Jex, tendered to the plaintiff the amount apparently due in United States legal tender notes, which was refused, the plaintiff claiming that she was entitled to payment in gold or its equivalent. In December, 1869, *Hepburn* v. *Griswold,* 8 Wall. 605, the Supreme Court of the United States held the Legal Tender Act unconstitutional as to antecedent contracts. This decision was reversed in *Knox* v. *Lee,* 12 Wall. 457, decided December, 1870. The tender made by the defendant to the plaintiff in this case was made on the 1st day of March, 1870. The court in sustaining the view of the plaintiff used the following language (p. 424): "The plaintiff had a right to repose upon the decision of the highest judicial tribunal in the land. It was, as applied to the relations between these parties and to this case, the law, and not the mere evidence

of the law. Respect for the decisions of courts is a duty inculcated by writers upon the law, and enforced by considerations of public policy. It is said by Kent (1 Com. 476) : ' If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness, and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it.' "

*Muhlker* v. *New York & Harlem R. R. Co.,* 197 U. S. 544, reported below in 173 N. Y. 549.

Prior to the time the plaintiffs in the above case acquired title the cases known as the elevated railroad cases had been decided, *Story* v. *New York Elevated R. R. Co.,* 90 N. Y. 122, in 1882, and *Lahr* v. *Metropolitan Elevated R. Co.,* 104 id. 268, in 1887; the plaintiff acquired title to his property in 1888.

The opinion of Mr. Justice McKenna, writing for the court (p. 570), used the following language : " When the plaintiff acquired his title those cases were the law of New York, and assured to him that his easements of light and air were secured by contract as expressed in those cases, and could not be taken from him without payment of compensation. And this is the ground of our decision. We are not called upon to discuss the power, or the limitations upon the power, of the courts of New York to declare rules of property, or change, or modify their decisions, but only to decide that such power cannot be exercised to take away rights which have been acquired by contract and have come under the protection of the Constitution of the United States. And we determine for ourselves the existence and extent of such contract. This is a truism; and when there is a diversity of state decisions the first in time may constitute the obligation of the contract and the measure of rights under it. Hence the importance of the elevated railroad cases

and the doctrine they had pronounced when the plaintiff acquired his property. He bought under their assurance, and that these decisions might have been different, or that the plaintiff might have balanced the chances of the commercial advantage between the right to have the street remain open and the expectation that it would remain so is too intangible to estimate."

In *Douglass* v. *County of Pike,* 101 U. S. 677 (on p. 687), Chief Justice Waite, writing for the court, said: "After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment. So far as this case is concerned, we have no hesitation in saying that the rights of parties are to be determined according to the law as it was judicially construed to be when the bonds in question were put upon the market as commercial paper." *Park Hill Co.* v. *Herriot,* 41 App. Div. 324; also article by Jeremiah Smith in 27 Harvard Law Review, on page 366; Prof. John C. Gray in The Nature and Sources of the Law, §§ 215–231, 465–512, 545–550, 628–636.

The claim of the plaintiff that it had a right to rely upon the act of 1914, the validity of which was subsequently attested by the Court of Appeals, is one which can be, and has been in this case, supported by forceful argument; but I think the weight of authority and considerations of public policy justify a finding in the language of Kent: " If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness, and the community have a right to regard it as a just declara-

tion or exposition of the law, and to regulate their actions and contracts by it.''

The learned counsel for the plaintiff in his brief refers to the case of *People* v. *Luhrs,* 195 N. Y. 372, wherein (on p. 383) Vann, J., writing for the court, in referring to the decision of *Wright* v. *Hart,* says: '' Moreover, the value of that case as an authority is impaired by a recent decision of the Supreme Court of the United States.''

The learned counsel for the defendant in this connection refers to the case of *People ex rel. Moskowitz* v. *Jenkins,* 202 N. Y. 53, wherein (on p. 59) the case of *Wright* v. *Hart* is cited as an authority for the decision of the court therein. The fact is that while the decision in the *Wright* case was impaired by the decisions in the case of *Lemieux* v. *Young,* and *Kidd, Dater & Price Co.* v. *Musselman Grocery Co., supra,* in so far as those decisions decided that the act in question was not in violation of any provision of the Federal Constitution, nevertheless the case of *Wright* v. *Hart* remained as an authority in this state until it was overruled in the case of *Klein* v. *Maravelas.* Practically it stood as an authority the same as if it had been decided solely upon the ground that it was in violation of the provisions of the Constitution of the state of New York.

This fact clearly appears in the concise and very able opinion of Cardozo, J., writing for the court in the *Klein* case. The court in deciding the *Klein* case, expressly overruling the *Wright* case, necessarily determined that until such decision the *Wright* case expressed the law in this state.

Judgment for the defendants with costs to the defendant Joseph A. Farney.

Judgment for defendants.