GEORGE G. BARKER, assignee, *vs.* UNITED STATES FIDELITY
AND GUARANTY COMPANY.

Plymouth.    October 16, 1917. — November 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Evidence,* Opinion: experts, Of foreign law.  *Practice, Civil,* Counsel as witness,
Auditor's report, Exceptions.  *Bond,* Execution.  *Partnership.  Conflict of
Laws.*

In an action against the surety on an alleged bond of indemnity, just before the
close of the evidence the defendant raised the point that the bond was not exe-
cuted properly.  It was signed "H Brothers and B, By A M B, one of the firm."
The attesting clause recited that "said principals have hereunto set their hands
and seals," but no seal was affixed to the signature described above.  After the
evidence had been closed, the presiding judge at the request of the plaintiff re-
opened the case and allowed the plaintiff to introduce testimony that the contract
guaranteed and the bond of indemnity were delivered in the State of New York,
and the plaintiff contended that the execution of the bond was valid and binding
on the surety under the laws of New York.  The plaintiff's counsel offered as an
expert witness as to the law of New York his associate counsel, who knew the
law of New York only by investigation and study, never having practised in that
State, calling the attention of the judge to the New York decisions on which the
proposed witness based his opinion.  Subject to the defendant's exception, the
judge allowed the witness to testify as an expert.  *Held,* with some hesitation,
that, although the judge well might have declined to accept the witness as an
expert, yet under the circumstances of the trial it could not be said that the
determination by the judge of the preliminary question of the qualification of the
expert was clearly wrong and that therefore it must stand.

In the case above described it also was *held* that, the testimony of the expert as to
the law of New York having been admitted, it was not necessary to consider
whether the evidence in the case would warrant a finding that the signature in
the firm name by one of the partners was ratified by his copartner and was bind-
ing under the law of this Commonwealth, the bond having been delivered in the
city of New York where the persons concerned carried on business, so that it was
to be assumed that the liability of the surety was to be determined by the law of
New York.

In the same case it was *held* that an issue in regard to the cause of the decay of the
timbers and planking of a chartered tugboat properly was left to the jury with
careful instructions upon conflicting evidence.

In the same case the evidence consisted of an auditor's report and of oral testimony,
and the defendant excepted to the refusal of the presiding judge to make certain
rulings which dealt only with the evidence contained in the auditor's report.
*Held,* that these exceptions must be overruled because the judge was not obliged
to select for special comment the part of the evidence which was contained in the
auditor's report.

CONTRACT against the surety on two alleged bonds of indemnity, as described in the opinion. Writ dated September 15, 1910.

In the Superior Court the case was referred to an auditor, who filed a report in which he found that the defendant owed the plaintiff the sum of $7,522.47 with interest from the date of the writ. Later the case was tried before *Dana*, J. The plaintiff put in evidence the auditor's report and the oral testimony of various witnesses, all of whom, except the experts, had testified before the auditor. The defendant also introduced evidence. After the close of the evidence there was a reopening of the case and further testimony was introduced by the plaintiff as explained in the opinion. The essential facts shown by the evidence are stated in the opinion. At the final close of the evidence the defendant asked the judge to make the following rulings, as well as others that were given by the judge as instructions to the jury:

"1. Upon all the evidence the plaintiff cannot recover.

"2. Upon all the evidence a verdict should be directed for the defendant.

"3. The signature and execution of the instruments in suit cannot be held sufficient to entitle the plaintiff to a finding and verdict.

"4. The signature of the principals in the manner 'By Anson M. Bangs, one of the firm' does not bind the defendant and make it liable in this action.

"5. The failure of the principals to sign and seal the instruments in suit defeats the right of the plaintiff to recover in this action.

"6. The instruments in suit will not support this action because they are unsealed by the principals.

"7. The instruments in suit will not support this action because they are not signed by both principals.

"8. The instruments in suit will not support this action because they are not signed by James Hughes.

"9. The instruments in suit will not support this action because they are not signed by Anson M. Bangs.

"10. If Hughes Brothers and Bangs used the boat only for the purpose and employed it in the tending of dredges and towing scows between New York Harbor and Sandy Hook, or adjacent places, the plaintiff cannot recover."

"12. There is no evidence in the case which can enable the jury

to determine the limit or extent of the injury to the Anna W. for which the defendant can be held liable."

"14. There is no evidence in the case from which it can be determined what was the wear and tear of the Anna W. or to what extent her wear and tear and resulting depreciation would result from her proper use, her constantly increasing age and lack of any safeguards against decay when she was built."

"16. The holding of a dredge on the range cannot furnish a basis of liability in this action.

"17. The holding of a dredge on the range was one of the uses which was contemplated by the charter of the Anna W."

"19. If the jury is unable to determine from the evidence what if any amount was spent for repairs caused by ordinary wear and tear and what for unreasonable wear and tear and what to make the boat 'practically as good as new,' there cannot be a verdict for the plaintiff."

"21. The findings and report of the auditor are speculative and conjectural and should be disregarded by the jury so far as they seek to state the extent of the damage caused by improper acts of Hughes Brothers and Bangs and the amount awarded therefor.

"22. The jury cannot award damages for injury to the Anna W. because there is no definite and certain testimony upon which to ascertain the figures and cost.

"23. The jury cannot award damages for loss of rent of the Anna W. due to her alleged improper use, because there is no definite and certain testimony upon which to ascertain the length of time required to perform the necessary repairs caused by the injuries resulting from any misuse for which Hughes Brothers and Bangs were responsible.

"24. The claim that was assigned to the plaintiff by the National Dredging Company did not include the items for damages caused by the alleged misuse of the Anna W. by Hughes Brothers and Bangs, but was limited to the claim as it had then been made on the defendant. It was neither in contemplation of the assignor nor the assignee. It cannot now be made a part of the claim upon which this suit was brought.

"25. If the jury find that the Anna W. was not in a leaking condition when she was put in Woodall's Dock in January, 1906,

there can be no recovery for damages alleged to be due to misuse by Hughes Brothers and Bangs.

"26. The extension of time given to Hughes Brothers and Bangs when the note of the Federal Contracting Company was taken operated to discharge this defendant from further liability on these bonds.

"27. Even though the taking of the note enured to the benefit of this defendant and a part of it was paid at its maturity and the balance was paid at the maturity of the second note given to renew a portion of its amount, this defendant was discharged by the extension of time given to Hughes Brothers and Bangs.

"28. The facts stated in the report of the auditor upon which his conclusions are based are the same facts which are contained in the testimony offered to the jury and are not sufficient in law to support the conclusions reached by the auditor and to justify a finding for the plaintiff.

"29. If the jury find the facts to be the same as stated by the auditor in his report, then upon all the evidence there should be a verdict for the defendant.

"30. If upon all the evidence in the case the jury find the facts to be what the auditor has stated in his report, the verdict must be for the defendant.

"31. The evidence, facts and findings reported by the auditor in his report do not justify his general finding and conclusion and the general finding and conclusion was not warranted or justified as a matter of law and is erroneous as a matter of law apparent upon the face of his report; therefore, while the jury are to regard his report as *prima facie* evidence of the facts and findings therein stated, the jury are instructed as a matter of law that the evidence, facts and findings reported by the auditor do not warrant or justify the general finding or conclusion to which the auditor has come.

"32. The general finding and conclusion of the auditor, based upon the evidence, facts and findings reported by him, was not warranted or justified as a matter of law and is erroneous as a matter of law upon the face of his report and therefore, while the jury are to regard the report as *prima facie* evidence of the facts and subordinate findings therein stated in connection with other evidence in the case, the jury are instructed that as a matter of

law the evidence, facts and findings reported by the auditor do not warrant or justify the general finding or conclusion to which the auditor has come."

"34. The owner under the charter had a right to select officers for the Anna W. Its failure to do so must be considered as affecting and modifying the liability of the defendant. It was not only a right; it was a duty owed to the surety. (Limited to last sentence.)

"35. Upon all the evidence in the case and taking into consideration that the Anna W. was a tugboat, there is no evidence that when she was turned over to the National Dredging Company on January 15, 1906, that she had been used except as a tugboat is ordinarily used and was contemplated by the charter and that the damages stated in the survey were the result of accidents due to the ordinary use of such boats in similar service."

"38. Upon the questions of rent, interest, transfer of boats to the New Jersey company, arbitration, extension of time and the claims made by the plaintiff stated in paragraph fourteen of the auditor's report, there has been no evidence at the trial to the jury in addition to the auditor's report, and upon all the evidence the verdict upon these portions of the plaintiff's claim should be for the defendant.

"39. The position of this defendant is presumed by law to have been prejudiced by the taking of the notes of the Federal Contracting Company and the extension of time given to Hughes Brothers and Bangs.

"40. There is no evidence in the case to show the extent of damage caused by the alleged misuse of the Anna W. outside the survey, and until the auditor's report is overcome by other evidence it must stand and control."

The judge refused to make any of the rulings quoted above except so far as they were covered by his charge and except the last sentence of the ruling numbered thirty-four, to which he limited that ruling. He submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $26,675, of which the plaintiff, in accordance with an order made by the judge upon a motion of the defendant for a new trial, remitted $4,175, leaving the verdict to stand in the sum of $22,500. The defendant alleged exceptions, which are explained in the opinion.

*H. V. Cunningham,* for the defendant.

*S. L. Whipple,* (*J. M. Hoy* with him,) for the plaintiff.

DE COURCY, J.    In 1904, James Hughes and Anson M. Bangs, doing business in New York City under the firm name of Hughes Brothers and Bangs, were engaged in excavating a channel in New York harbor.    They entered into two separate charter parties with the owner, the National Dredging Company (the assignor of the plaintiff), for the tugboats known as the Anna W. and the Gerry; and gave a separate bond, with the defendant as surety, to secure the faithful performance of the obligations of each charter party.    The tugboats were delivered to the charterers on September 10, 1904, and thereafter remained in their possession, the Gerry until September 9, 1905, and the Anna W. until January 15, 1906.

This action is brought against the surety to recover for the alleged breach of each bond.    The count on the bond given in connection with the Gerry is for a small balance of rent.    The count on the bond given in connection with the Anna W. is to recover a balance of rent and also damages for injury to that tugboat beyond the ordinary wear and tear justified under the terms of the charter party.    There was a verdict for the plaintiff, and the case is here on the defendant's exceptions to the admission of testimony and to the refusal of the presiding judge to give certain rulings requested.

1. The bonds were signed, "Hughes Brothers and Bangs, By Anson M. Bangs, one of the firm."    The attesting clause recited "said principals have hereunto set their hands and seals," but no seal was affixed.    After the close of the evidence the judge reopened the case, and permitted the plaintiff to introduce testimony that the charter parties and the bonds were delivered in the city of New York.    The plaintiff contended that the execution of the bond was valid and binding on the surety under the laws of New York; and called one of his own counsel as an expert, who testified that in his opinion these bonds were binding upon the surety under the New York law.    The defendant's exception is to the qualification of the witness as an expert.    It was for the presiding judge to determine this preliminary question, and his decision must stand unless it was clearly wrong.    *Greene* v. *Corey,* 210 Mass. 536.    In view of the limited experience of the witness

as to the law of a State where he had never practised, and his partisan interest as associate counsel, we think the judge well might have declined to accept him as an expert witness. On the other hand, the defendant reserved until the close of the testimony the point which made this evidence material, and the New York decisions on which the witness based his opinion were called to the attention of the judge. With some hesitation we overrule this exception.

2. Requests numbered one to nine inclusive raise the question of the validity of the bonds and the liability of the surety thereon in view of the signature of the firm name by one partner, and the absence of a seal. It is not necessary to consider whether the evidence would warrant a finding that the signature in the firm name by Anson M. Bangs was authorized or ratified by his co-partner, James Hughes, and binding under our law. See *Russell* v. *Annable,* 109 Mass. 72; *Golding* v. *Brennan,* 183 Mass. 286. The bonds were executed and delivered in New York city, where the contractors carried on business; and presumably the liability of the surety thereon must be determined by New York law. In view of the testimony of the expert witness as to the validity and effect of the bonds under that law these rulings could not be given.

3. Requests numbered twelve, fourteen, nineteen, twenty-two and forty were refused rightly. Without reciting the conflicting evidence in detail, it warranted the jury in finding that the decayed condition of the timbers and planking of the Anna W. found after her return by the charterers, was not wholly due to the absence of salt pockets, lack of ventilation and the use of fernaline as a wood preservative, as the defendant contended. There was also evidence for the jury, the weight of which was for them to determine, that the decay was ordinary wet rot, as distinguished from dry rot; and that it was caused by the seeping of water, — when the boat was between the load water line and the light water line, where the planking was strained and the boat leaky, — wetting the inside, and then drying when the boat was not deep in the water. There was also evidence that the leaks at the water line, and the consequent rotten condition of the timbers, were due to improper usage to which the Anna W. was subjected by the charterer, such as the collisions, the absence of proper fenders while towing heavy scows alongside, and

the use of the tugboat head on to the dredge, for the purpose of holding the dredge in position "when the wind blew so hard that they couldn't hold her with cables." The judge rightly submitted to the jury these issues, with the conflicting evidence, and carefully instructed them to confine the plaintiff's damages to the decayed condition of the boat shown to have been caused by misuse on the part of the charterers.

4. Requests twenty-one, twenty-eight, twenty-nine, thirty, thirty-one and thirty-two deal with the auditor's report. This was only a part of the evidence, and the uncertainties complained of in that report were largely remedied by the additional testimony submitted to the jury. The judge was not obliged to select this part of the evidence for special comment, and no exception was taken to the way he dealt with it in the charge.

5. Requests twenty-six, twenty-seven and thirty-nine could not be given. On the findings of the auditor the notes taken by the owners when the charterers were behind in their payments, were taken as collateral security and not in payment. So far as any alleged extension of time was involved, the auditor further found that the notes were asked for in consequence of the suggestion of the defendant's representative, made when he was notified of the arrears; and that the defendant suffered no actual harm by the transaction. See *People* v. *Traes*, 188 Mich. 345; *Guaranty Co.* v. *Pressed Brick Co.* 191 U. S. 416; *Olmstead* v. *Latimer*, 158 N. Y. 313.

6. The remaining requests may be disposed of briefly. Those numbered ten, sixteen and seventeen could not be given in view of the evidence, especially that showing that the charterers used the tugboat in an improper and careless manner. And see *Barber Asphalt Paving Co.* v. *Mullen*, 220 Mass. 308. For a like reason twenty-three and thirty-five were rightly refused. As twenty-four, twenty-five, thirty-four and thirty-eight have not been argued, it is enough to say that we discover no error in the refusal to give them.

*Exceptions overruled.*