Bolster, C. J.
The plaintiff’s declaration is in two counts. The first claims damages for breach of an alleged agreement to employ the plaintiff for six months, and the *102 second alleges breach, of an agreement to employ the plaintiff “permanently” as its sales manager in the New England territory. Neither count is merely for money earned before termination. The judge found for the plaintiff for $15,250. not specifically allocated to either count and at the plaintiff’s request found that the parties, on August 15, 1934, at New York, agreed that the plaintiff should be the defendants’ exclusive and permanent sales agent in New England, except Connecticut, on a certain commission basis,, that the plaintiff performed his part for a month, at the end of which time he was discharged without just cause. The findings also recite an admission by the defendant “that the contract was made in view of an universal custom of the trade that a sales agent will not be discharged so long as he conducts himself in his work with honesty and efficiency”.
The fundamental and primary question is what law is to govern the validity and interpretation of the bargain which has been found. It is, we think, that of the law of the state of New York, which was called to the attention of the court, to what extent is not shown. Walker v. Lloyd, 1936 A. S. 1939. cf. Restatement, Conflict of Laws, § 334. What is stated in Barker v. U. S. Fidelity & Guaranty Co., 228 Mass. 421 at 427 as a presumption only has in our opinion become crystallized in a rule of law from which this plaintiff cannot escape. The practical reasons for the rule are set out by Professor Beale in 23 Harvard Law Review 260. If the defendant’s argument as to the law of New York is sound, the plaintiff is in no different position than one who has made an oral bargain for a term demise, only to find out that the legal result of the bargain is a tenancy at will, because that is what the controlling law says shall be result. If it was in law a contract strictly and always at will, it is terminable at will. The defendant’s argument is rested on. *103 the case of Arenz v. Morse Dry Dock & Repair Co., 249 N. Y. 439, and the New York Statute of 1933, Ch. 616.
The Arenz case was one in which a man who had been promised “permanent employment” was discharged after a service of several years because of slackness of business. The actual decision was that the discharge was justified, which is only another way of saying that the parties did not, impliedly, mean that the employment should continue into a time of depression. All that is said in the opinion about such an employment being “at will” is pure dictum, not wholly borne out by the cases cited and the court was clearly of opinion that a termination must rest on “some good reason”. If one has an absolute right to terminate, his reasons are immaterial. We do not think that the Arenz case stands for the proposition that one who has been given permanent employment as an exclusive sales agent can be discharged without just cause at the end of a month, cf. Williston, Contracts, Revised Ed. §§39, 1027-A.
Neither do we think that the Statute of 1933 covers this case. It relates to a case in which performance must run— not may run — throughout a lifetime such as a contract for support for life. If this contract here could rightly be ended at an earlier time, whether because of the plaintiff’s failing powers, or because of the drying up of the market for the defendant’s product, then it is not a contract “which is not to be completed before the end of a lifetime”. Neither is it, either under the New York or Massachusetts Statute of Frauds, a contract which is not to be performed within a year, and so requiring a writing. Browne, Statute of Frauds, Sec. 272 et seq.
It must be remembered that foreign law is intrinsically a question of fact, else there is no sense in letting expert witnesses testify to it, and a court is not justified in acting only upon such aspects and authorities as are called to its *104 attention. If it is a question of law, it is a court’s business to find the right answer at all hazards. So, treating it as a question of fact, the only question here is whether the judge made an obviously wrong finding as to the New York law. Since the report shows no ruling specifically posited on New York Law, and the report only generalizes as to the material presented to him on that point, we cannot find reversible error.
We are therefore driven back upon the common law of this state, presumably that of New York, and by that it seems plain that such a bargain as the judge found is not unenforceable because of indefiniteness. It will aid to clearness of thought to keep separate the question of an initial failure of a contract because of indefiniteness, and the question what rights of termination are tacitly reserved to one party or the other because of the nature of the employment.
In Carnig v. Carr, 167 Mass. 544, an action for damages for wrongful discharge of one promised “permanent employment”, a verdict for the plaintiff was upheld. The defendant had suspended the plaintiff’s employment though he had work for him to do.
In Frati v. Jannini, 226 Mass. 430 a hiring at a rate of pay “by the month” was held to preclude “a ruling or finding that the hiring was for an indefinite period terminable at the will of either party”. The implication arising from paying by the month was that the employee was to work at least for a month. In the present case the statement “Come back at the- end of six months and write your own contract,” whatever that might mean at the end of that period as to the future rights and relationship of the parties, clearly shows that during that period there was intended to be a contract for service, not terminable except for cause by either party. A party to such a contract, ending it *105 without cause at the end of a month, is in no position to argue in justification of the breach, that the parties might have experienced a falling out at the end of six months. It is the business of the court, if it can do so consistently with the rules of law, to give effect to the bargain of parties who evidently intended to contract, and not to search for legal reasons by which their intention may be thwarted. We think that Carnig v. Carr, shows that the parties originally made a valid contract, not one originally invalid, and that this case therefore comes down, on this branch, to the question of a right to terminate. If the law can say that an offer, intrinsically revocable, cannot be revoked in such a way that its revocation will work a fraud, Ellicott v. Kazajian, 255 Mass. 459, 462. cf. 1 Williston, Contracts, Rev. Ed. §60-A it certainly can say that a termination from personal spite, as might have been found on the evidence, is no rightful termination, and consequently is a breach.
We are unable to agree with the defendant that if a bilateral contract of employment and service, such as the judge found here, is made and partly performed, it is at will unless the employee has given some consideration in addition to his promise to serve. The fact that the employee has given up something of value, be it other business advantages or the release of a personal injury claim, may be an item of significance in determining what kind of a bargain the parties made, expressly or tacitly, whether at will or something stronger. But to enlarge the staple rules of consideration in bilateral contracts by saying that unless the employee gives something more than his promise the contract is necessarily and always a contract terminable at will, regardless of other evidence pointing squarely in the opposite direction, is a conclusion to which in our opinion we are forced neither by reason nor precedent, cf. Mechem, Agency, §604. The case of Pierce v. Tenn. Coal & R. R. Co., *106 173 U. S. 1 appears to us to be no authority in support of the defendant’s proposition, but rather against it. The fact that the court stressed the fact of released injury, does not mean, given a bilateral contract, that there must be such additional consideration. It is all a question of interpretation and that depends on the entire evidence. The law of consideration as such is not involved.
If the parties to this contract had reduced it to writing, saying, “We are stipulating for permanent employment, and not for an employment terminable at the will of either except for cause” we apprehend that the court, relieved by plain words of the burden of construction, could only defeat the plaintiff by saying that the law could not enforce the bargain he meant to make. If that is the situation, candor would seem to require that the refusal be put upon that ground, rather than to drag in questions of consideration. Since the employment obviously is not inevitably for life, that contingency, irrelevant here, has no use except in terrorem. . Neither, without doing violence to the evidence, can its force be blunted by saying that “permanent employment”, as the parties used those words here, lay in the realm of hope and prophecy. This plaintiff was bargaining for a contract, not consulting an oracle, and his rejection of the idea of temporary employment plainly shows that a contract at will was far from his mind, and wholly alien to the words that were used.
Believing, with the support of Professor Williston, that the contract found by the court is not legally incapable of enforcement, it remains to consider decisions subsequent to Carnig v. Carr.
In Kirkley v. F. H. Roberts Co., 268 Mass. 246, there was a written contract to employ the plaintiff as sales agent “so long as he shall faithfully and diligently perform the duties of his employment” — something not intrinsically different *107 from the shorter expression “permanent employment”. The defendant asked the court to rule that the contract could be terminated at the will of either party. Refusal so to rule was held no error, citing Carnig v. Carr.
In Campion v. B & M R. R., 269 Mass. 579, the plaintiff had “bid off” a “permanent vacancy” as tower man, after two years service had been discharged for insubordination, and sued alleging breach of a contract for permanent employment. The court ordered a verdict for the defendant, and exceptions thereto were overruled. The opinion did not go upon the easy ground of discharge for cause, but went the full length of saying that the contract could be ended at the will of either party “for cause or without cause”. The court said that the defendant by inviting bids for a “permanent vacancy” did not agree to employ a man for life or for any definite period of time without regard to his fitness for the position, — a proposition readily to be conceded. Whether it necessarily follows that there can be a discharge “for cause or without cause” is quite a different proposition, which, so far as ascertaining the intent of the parties is concerned, must be determined by their situation and words, and when that is done, and not till then, does the question come whether the law can carry their bargain into effect.
A “hopeful’ encouragement and prophecy” case is Pisco-Pausata v. Oliver Ditson Co., 276 Mass. 377. On the evidence there, the court held that the parties did not mutually stipulate for permanent employment, and the question whether such an agreement, if found, would be actionable, was expressly left open. Such a contract was found in our case, and we think the evidence warranted it.
In Globe Paper Co. v. Russell Box Co., 1935 A. S. 1307, a contract terminable at will was found. That case is no au *108 thority for the proposition that parties who try to make a contract for something more than at will do not as a matter of law succeed in their attempt.
The next question is whether there was prejudicial error in admitting the plaintiff’s testimony as to the talk Hunt had with him, in New York. This is not a case in which one who assumes to speak for a corporation does so wholly without credentials. In addition to the fact that Hunt was a vice-president of the defendant, — which alone is not enough —there is in evidence a telegram from the corporation opening negotiations, the receipt by the corporation of a very general statement by the plaintiff of a willingness to enter the defendant’s employment, a letter of August 8 on the defendant’s letter-head saying, “we are glad to welcome you again to our sales force” and an appointment to meet at the defendant’s New York office, acquiesced in by the plaintiff by telegram to the defendant at Aurora, 111., saying “will cover New England states — will meet Mr. Hunt in New York”. This correspondence sufficiently shows that the parties had not then fixed the final terms of their bargain and the defendant’s request bearing on the legal results of that preliminary correspondence are immaterial. Now it is to be observed that the defendant’s objection to the plaintiff’s evidence as to what Hunt said to him in New York is a threshold objection that the plaintiff had not shown any authority in Hunt to talk at all. We think he had been sufficiently accredited. If his talk went beyond his authority, express, implied or ostensible, the defendant’s remedy was to move to strike out the offending parts, which was not done. None of the requests for rulings raise the question of the sufficiency of the entire evidence to support the finding that the contract found to have been made was made by an agent authorized by the defendant to make it in its behalf, unless it be the general request on all the evidence, or, *109 what is its equivalent, the motion for a directed finding. It has frequently been held here that both these forms of presenting a legal question to -the court for its decision are alike within Eule 28, and that substance and not form or label, is to be regarded. We know what the defendant meant in both ruling and motion and we have no doubt the trial judge knew it also. Still, under the rule, we cannot be compelled to review such generalized requests. We still have power to do so, but in view of the fact that the defendant introduced no evidence to show want of authority in Hunt to contract for the defendant, we decline to use that power so far as concerns the ruling on evidence.
What has been said hitherto deals chiefly with the defendant’s claim that the plaintiff’s employment was wholly at will, and therefore his discharge did him no legal harm. The judge has found “permanent employment”, and the evidence warranted that finding. But the scope of that phrase is another matter. The amount of the finding, in the light of the evidence, sufficiently indicates that the assessment of damages covered a period of years. We think this was error, and while it is true that no specific request for ruling touches the question of assessment, we still have power to give relief. Kaplan v. Bell, App. Div. No. 6134 of 1936 (47-275).
On the plaintiff’s own evidence, Hunt said to him that for six months the defendant would pay a certain commission on orders, and, “You can have the line as long as you want it. At the end of six months come back and write your own contract”. This does not mean that after six months the defendant would be bound by whatever contract the plaintiff should present to it. Eather it indicates that at the end of six months the parties should resume negotiations, and that during the interval the plaintiff should continue as the defendant’s' agent. Lyman v. Robinson, 12 *110 Allen, 242. Sibley v. Felton, 156 Mass. 273. Edge Moor Bridge Works v. Bristol, 170 Mass. 528. Doten v. Chase, 237 Mass. 218. Wilcox Inc. v. Shell &c. Co., 283 Mass., 383. cf. Lieberman v. Cohn, 288 Mass. 327.
It must be remembered that while a jury must often settle the disputed terms of a bargain, the construction of the contract remains a question of law. Stoops v. Smith, 100 Mass. 63.
What contract, if any, these parties might or might not have made at the end of six months is wholly problematical. Yet the terms of that contract, if made, and not of the first one, would give the measure of the plaintiff’s recovery upon a subsequent breach.
It cannot, in our opinion, be successfully contended that Hunt did not have authority to employ the plaintiff for a period of six months.
We have considered whether any of the issues already determined can be safely excluded from a retrial and have concluded that they can not.
New trial ordered.