THOMAS ADAMSON, Respondent, v. JAMES H. ADAMSON, Defendant, Impleaded with MINNIE C. ADAMSON, Appellant.

Second Department, May 7, 1937.

*Francis G. Hoyt* [*John H. Jackson* with him on the brief], for the appellant.

*Robert P. Levis,* for the respondent.

CLOSE, J. Defendant Minnie C. Adamson appeals from a summary judgment in favor of the plaintiff in the sum of $105,727.05. She appeals also from the resettled order upon which the judgment was entered. The action is based upon a promissory note now held by the plaintiff, made by the appellant and her husband, James H. Adamson, to the American Seating Company in the sum of $100,000. The answer admits the making of the note, a demand for payment, and that only the sum of $10,000 has been paid on account thereof. The plaintiff and the comaker, James H. Adamson, are brothers. James H. Adamson filed a voluntary petition in bankruptcy under section 74 of the Bankruptcy Act (U. S. Code, tit. 11, § 202) for an extension of time or to effect a composition with his creditors. He was not served in this action though named as a defendant.

The question here is whether the appellant, as comaker, may set up defenses available to her husband individually. These defenses may be briefly stated. *First,* that the plaintiff holds the note as the agent of Percy Adamson, also a brother of the plaintiff, and that the note was purchased from the American Seating Company with the funds of a partnership composed of James H. Adamson, the appellant's husband, and his brother Percy. *Second,* that Percy agreed with James to purchase the note with James' share of the profits of such partnership, and that the funds expended in the purchase of the note came from that source. *Third,* that the collateral given as security for the note was worth more than the amount due on the note and was sold contrary to an agreement with James H. Adamson that it would not be sold unless ten days' written notice of sale was given. The answer, however, admits that the defendant-appellant received due notice of the sale of the collateral. The so-called third defense is without merit.

Admitting that the first and second defenses may be available to James H. Adamson (*Adamson* v. *Adamson,* 249 App. Div. 418), the question remains whether this appellant can avail herself of them. If the defenses are good, the plaintiff holds the note as

trustee *ex maleficio* for the benefit of defendant James H. Adamson. (*Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380.)   The fact that the note is in the name of Thomas would present no difficulty. Equity could follow it into the hands of the dummy holder and declare him to be a constructive trustee.   The close relationship, both as partners and as blood relatives, would have an important bearing.   (*Peck* v. *Peck*, 110 N. Y. 64.)

Assuming the correctness of what has been said above, the difficulty remains that it is not James H. Adamson who raises these questions, but the other defendant, his wife.   She claims no title to the note, and no beneficial interest.   She has no interest in either the legal or equitable ownership, unless her liability is affected.   If we grant the truth of the defenses, the fact still remains that the plaintiff holds the legal title to the note.   He may hold either the note or its proceeds as trustee for another, but that is an issue to which the appellant is a stranger.   In *Hays* v. *Hathorn* (74 N. Y. 486) the court said (p. 490): " From this glance at the cases, it appears that it is ordinarily no defense to the party sued upon commercial paper, to show that the transfer under which the plaintiff holds it is without consideration or subject to equities between him and his assignor, or colorable and merely for the purpose of collection, or to secure a debt contracted by an agent without sufficient authority.   It is sufficient to make the plaintiff the real party in interest, if he have the legal title either by written transfer or delivery, whatever may be the equities between him and his assignor.   But to be entitled to sue, he must now have the right of possession and ordinarily be the legal owner.   *Such ownership may be as equitable trustee,* it may have been acquired without adequate consideration, but must be sufficient to protect the defendant upon a recovery against him from a subsequent action by the assignor."   (Italics mine.)

The situation would be different if the appellant claimed that the plaintiff had no title whatever to the note.   That issue may always be raised, for otherwise the defendant might be subjected to double liability on the same instrument.   (*Hays* v. *Hathorn, supra.*) But here the fact that the plaintiff owns the legal title is not disputed.   A recovery by the plaintiff will, therefore, protect the appellant from further recovery by any one else.

There appears to be no authority on the question whether one of two makers of a note may set up defenses available to the other. An indorser, however, cannot always avail himself of defenses existing in favor of the maker.   (*Elliott* v. *Brady*, 192 N. Y. 221; *Segar, Inc.*, v. *1967–1975 Ocean Avenue Realty Corp.*, 127 Misc. 805.)   And conversely, the indorser's defenses may not be available

to the maker.  (*Madison Square Bank* v. *Pierce*, 137 N. Y. 444; *Twelfth Ward Bank* v. *Brooks*, 63 App. Div. 220.)   These cases may be said to rest upon the general theory that where the defense arises out of a transaction to which only one defendant was a party, that defendant only may have the advantage of it.   Thus in *Elliott* v. *Brady* (*supra*) it was held that indorsers could not set up a defense that the maker had given the note under a contract of purchase induced by fraudulent representations on the part of the plaintiff, where the indorsers were not parties to the contract.   And in *Madison Square Bank* v. *Pierce* (*supra*) a partial payment of the note by the indorser was held to be no defense in an action against the maker.

Under the same principle it would seem to follow that a defense in favor of one maker would not *ipso facto* be available to a comaker. This is particularly true where the defense matter consists of an independent cause of action.   In *Elliott* v. *Brady* (*supra*), where the defendants stood in the relationship of sureties to the maker of the note, the court said (p. 226): " A party when sued upon his obligation cannot avail himself of an independent cause of action existing in favor of his principal against the plaintiff as a defense or counterclaim.   It is for the principal to determine what use he will make thereof and the surety has no control over him in this respect."

Here the defenses asserted by the appellant consist of an independent cause of action.   They are essentially counterclaims, and are set up as such in the answer.   The appellant demands affirmative relief in the form of a cancellation of the note.   She seeks a judgment declaring the plaintiff a trustee of the note for the benefit of James H. Adamson.   In either event, it is evident that the defense is based upon a cause of action in favor of James H. Adamson, to which the appellant is a stranger, and it is my conclusion that the appellant may not properly assert it.

It is argued that if the defenses are established, James H. Adamson will become in equity the holder of the note in his own right; and that the note will thereby be discharged as a matter of law under section 200 of the Negotiable Instruments Law.   The fallacy in the argument is that by establishing these defenses the appellant could obtain nothing more than a judgment declaring that the plaintiff holds the instrument in trust for James H. Adamson. The latter would not become the holder of the note.   " Holder " is defined in section 2 of the Negotiable Instruments Law as " the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."   Since James H. Adamson could not be made the holder of the note in this action, there could be no discharge within the meaning of section 200 of the statute.

The appellant argues also that as an accommodation maker of the note, she stands in the position of a surety and is, therefore, entitled to the benefit of any defense available to her principal. The answer alleges that the appellant was an accommodation maker, and the affidavits show that she received no part of the consideration. But even if it be assumed that the appellant thus became a surety, it would not follow that all defenses available to the principal may be asserted by the surety. In some cases it has been said that such is the general rule. (*Aeschlimann* v. *Presbyterian Hospital*, 165 N. Y. 296.) In *Ettlinger.* v. *National Surety Co.* (221 N. Y. 467) it was said that "In the past the answer to this question has not been altogether clear." It is definitely established, however, by the decision in *Elliott* v. *Brady* (192 N. Y. 221), which has been quoted above, that where the principal has an independent cause of action the surety may not make use of it either as a defense or as a counterclaim. The principle of *Elliott* v. *Brady* was repeated and followed in *Ettlinger* v. *National Surety Co.* (*supra*). The defenses asserted here are of the character described in these cases, and are, therefore, not available to the appellant, even if she is considered a surety.

I think, furthermore, that the appellant was not a surety. Section 3 of the Negotiable Instruments Law provides that "The person ' primarily ' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are ' secondarily ' liable."

The appellant is primarily liable within this definition. In *National Citizens' Bank* v. *Toplitz* (81 App. Div. 593; affd. on other grounds, 178 N. Y. 464) it was held that an accommodation maker of a note is primarily liable under section 3 of the statute, and is not a surety. In that case the Court of Appeals affirmed merely on the ground that the defendant's pleading and proof were insufficient to raise the question properly. The holding of the Appellate Division, First Department, seems, however, to be correct.

The defenses interposed are insufficient in law, and the resettled order and the judgment entered thereon should be affirmed, with ten dollars costs and disbursements.

Present — LAZANSKY, P. J., JOHNSTON, ADEL, TAYLOR and CLOSE, JJ.

Resettled order and the judgment entered thereon unanimously affirmed, with ten dollars costs and disbursements.