DONALD G. KEELER, Plaintiff, *v.* ROBERT P. TEMPLETON and MARJORIE K. TEMPLETON, Defendants.*

Supreme Court, Trial and Special Term, Chemung County, August 17, 1937.

---

* Motion to set aside judgment denied, 165 Misc. 392.

*Diven & Diven*, for the plaintiff.

*Henry & Denton*, for the defendants.

PERSONIUS, J.   The plaintiff resides in California, the defendants in New York State.   On May 8, 1928, the defendants, then residents of California, gave the plaintiff their note for $10,000 due three years after date (May 8, 1931).   The note was secured by a

deed of trust, herein called the "mortgage," to the Los Angeles First National Trust and Savings Bank, herein called the "bank."

On default in payment of interest, the trustee, on February 24, 1933, sold the property to the highest bidder (plaintiff) for $7,000. After deducting the expenses of sale and taxes and applying the balance to the note, there remained unpaid $4,483.40. This action is brought *on the note* to recover such balance.

Before the note matured, the defendants conveyed the mortgaged property to the Pacific Coast Development Company, Ltd., and it conveyed the same to Margaret Georges. She continued to be the owner until the foreclosure in 1933. Neither Mrs. Georges nor her husband assumed payment of the note. It is stipulated that, under the California law, "after conveyance of the trusteed [mortgaged] premises, the Templetons [defendants] occupied a status of surety on the note."

After Mrs. Georges became the owner and after the note became due, under circumstances later recounted, the note was extended by the following indorsement on the back: "This note is extended by mutual consent for two years from its present maturity, May 8th, 1931. Making its expiration date May 8th, 1933." Neither defendant consented to this extension nor had any knowledge thereof. No payments were made by the defendants after they conveyed the property in 1930.

The defendants contend that, being sureties, they were released by the extension. The plaintiff says, first, that the extension was void for lack of consideration. The defendants reply that (1) the promise of Mr. and Mrs. Georges to pay delinquent taxes for which they were not liable, and the payment thereof, and (2) the indorsement of the note by Mr. and Mrs. Georges at the time of the extension constituted consideration.

There is no evidence that the agreement of Mr. and Mrs. Georges to pay taxes in arrears, if made, was a condition of or consideration for the extension. Nothing is consideration which is not so regarded by the parties. (*McGovern* v. *City of New York*, 234 N. Y. 377, 388; *Beck* v. *Sheldon*, 259 id. 208, 211.)

As to the indorsement of the note by Mr. and Mrs. Georges — they signed on the back under the indorsement of the extension. The plaintiff testified that these signatures were to the extension and not written as indorsements; that the subject of their assuming the obligation was not even discussed and that nothing was asked, offered or given by Mr. or Mrs. Georges for the extension. On cross-examination plaintiff, although maintaining that he never intended to release the defendants, admitted "there might have subconsciously entered my mind that the Georges were co-responsible."

Mr. James Westervelt, a real estate broker of Los Angeles, had charge of the premises for Mrs. Georges while she was the owner and for this plaintiff after he became the purchaser on foreclosure. He apparently was in charge of the premises for the plaintiff when his deposition was taken. We are impressed with his testimony. He appears impartial, accurate and fair. He represented Mr. and Mrs. Georges in negotiating the extension. He testified that he telephoned the plaintiff about an extension; that the plaintiff said he thought it could be arranged but wanted to meet and talk with Mr. and Mrs. Georges; that he would grant the extension if he was satisfied that they would carry on, and asked Westervelt if Georges was acting in good faith and intended to pay the note. Mr. Westervelt arranged the meeting and took the plaintiff and Mr. and Mrs. Georges to the bank where the note was kept in the plaintiff's box. Westervelt also testified that before going to the bank, *Keeler (plaintiff) stated that it would be necessary, of course, for Mr. and Mrs. Georges to indorse the note;* that *en route* to the bank plaintiff stated that he believed he and Georges could work the matter out, and on returning, that they had come to an agreement and had extended the note. Mr. Westervelt further testified that after the default, the plaintiff said he thought he could hold Georges and asked if he, Georges, had any other properties.

We hold that Mr. and Mrs. Georges signed on the back of the note for the purpose of assuming liability thereon, and that their doing so was consideration for the extension. They were not granting the extension. There was no occasion for them to sign unless they were assuming liability. This is especially true as to Mr. Georges who was not an owner or part owner of the premises. The makers of the note were in the East. They were not paying interest or taxes. Mr. and/or Mrs. Georges was. They apparently owned other property in California. They were requesting the extension. What was more natural or reasonable than that they should be asked to assume the obligation and do so? The plaintiff personally chose the language of the extension and wrote it. Though admitting the agreement to extend, he failed to sign the indorsement. Why should Mr. and Mrs. Georges have signed except for the purpose of assuming the obligation?

It is stipulated that, under the California law, " a written instrument is presumptive evidence of a consideration. This presumption is disputable." The plaintiff, therefore, must produce evidence to overcome the presumption. He has failed to do so. We hold that the extension was valid.

For the purpose of this trial, the parties stipulated that, under the California law, " a valid extension of the date of payment of the

note without the consent of the Templetons [defendants] would release them from all liability thereon or for the obligation represented thereby." *The plaintiff now says this stipulation is in error.* Since it was made, December 11, 1936, the Supreme Court of California held that under its Uniform Negotiable Instruments Law, adopted in 1917, " one who appears as a primary party upon the face of a negotiable note, although in actuality a surety or accommodation maker, is not released by a binding extension agreement with the principal debtor made without his consent." (*Mortgage Guarantee Co.* v. *Chotiner*, 8 Cal. [2d] ——; 64 P. [2d] 138, 144.) In New York the question is still open in our highest court. (*National Citizens' Bank* v. *Toplitz*, 178 N. Y. 464, 466; *Manufacturers Trust Co.* v. *Steinhardt*, 265 id. 145, 149; *Adamson* v. *Adamson*, 251 App. Div. 187, 191.) In answer to plaintiff's argument that *Mortgage Guarantee Co.* v. *Chotiner* (*supra*) is decisive of this case, the defendants say (1) the California law. *in effect at the time of the extension* governs; (2) that the law of New York State governs; (3) that for the purpose of this case the law is established by the above stipulation.

Considering these arguments in that order:

(1) The Uniform Negotiable Instruments Law was adopted in California in 1917. In 1920 it was held by its Supreme Court that a mortgagor who had conveyed the mortgaged property became surety and was released by the mortgagee's agreement with the grantee to extend the time, unless the mortgagor consented. (*Braun* v. *Crew*, 183 Cal. 728; 192 P. 531.) Intermediate that holding and the decision in *Mortgage Guarantee Co.* v. *Chotiner* (*supra*), in 1936, the extension in question was given (1931) and the rights of the parties fixed. A party has " a right to repose upon the decision of the highest judicial tribunal in the land. * * * ' If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness, and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it.' " (*Harris* v. *Jex*, 55 N. Y. 421, 424; *Dauchey Co., Inc.,* v. *Farney*, 105 Misc. 470; *Taylor* v. *Ypsilanti*, 105 U. S. 60, 72; *Great Northern R. Co.* v. *Sunburst Oil & Ref. Co.*, 287 id. 358, 364.) This principle seems firmly established but we think it has no application here. The Supreme Court of California had not construed its Uniform Negotiable Instruments Law prior to its decision in *Mortgage Guarantee Co.* v. *Chotiner* (*supra*). As there pointed out at page 141, *Braun* v. *Crew* (*supra*) involved an instrument executed *before* the Negotiable Instruments Law was in effect and neither discussed nor referred to that law. *Mortgage Guarantee Co.* v.

*Chotiner (supra)*, therefore, neither reversed nor overruled the court's former decision in *Braun* v. *Crew (supra)*, whereas in *Harris* v. *Jex (supra)*, and kindred cases, there had been a direct overruling of former decisions " made upon solemn argument and mature deliberation."

(2) Notwithstanding 50 Corpus Juris, 15, citing *Toomer* v. *Dickerson* (37 Ga. 428), we think the liability of the defendants as sureties must be determined by the law of the State of California. (*Barker* v. *U. S. F. & G. Co.*, 228 Mass. 421; 117 N. E. 894; *Whitehead* v. *Heidenheimer*, 57 App. Div. 590, 593; Restatement of The Law of Conflict of Laws, § 374; 2 Beale Conflict of Laws, § 374.2, p. 1277, and cases cited.) The note in question was given in California by and to a resident of California. It was secured by property located in California and was to be paid in California. As said in *St. Nicholas Bank* v. *State Bank* (128 N. Y. 26, at p. 33): " The courts of this State and of other States and of the United States would follow the courts of that State [Tennessee] in the construction of its statute law."

(3) The parties stipulated the California law as above quoted for the purpose of this trial. Thereafter *Mortgage Guarantee Co.* v. *Chotiner (supra)* held the contrary. The laws of another State " are well understood to be facts, which must, like other facts, be proved before they can be received in a court of justice." (*Hanna* v. *Lichtenhein*, 225 N. Y. 579, 582.) The stipulation, therefore, is one of fact, not law. In a majority of States, stipulations as to law are held to be of no validity. (*North Platte Lodge* v. *Board of Equalization*, 125 Neb. 841; 252 N. W. 313; 92 A. L. R. 658.) Nowhere is there any limitation upon the right to stipulate facts. Where facts are stipulated through inadvertence, or mistake, the court has the power to furnish relief upon good cause shown (*Levy* v. *D., L. & W. R. R. Co.*, 211 App. Div. 503), but no application for such relief has been made. We are bound by the stipulation.

Finally, under the Uniform Negotiable Instruments Law (N. Y. Neg. Inst. Law, § 205; Cal. Civ. Code, 1933, § 3205), a negotiable instrument is avoided, if materially altered, without assent, as to any party to the alteration. By section 206 (Cal. Civ. Code, 1933, § 3206) any alteration which changes the time of payment, *i. e.*, accelerates or extends it, or " any other change or addition which alters the effect of the instrument in any respect," is a material alteration. In *Manufacturers Trust Co.* v. *Steinhardt* (265 N. Y. 145) the time of payment was accelerated by a contemporaneous agreement not known to defendant-indorser. This was held to be a material alteration discharging the indorser. Here the alteration consisted of an *addition* to the note which changed the time of payment and altered its effect. *This was done after the defendants,*

*by virtue of their conveyance of the mortgaged property, became sureties. They no longer occupied the relationship of makers.*

The extension (alteration) in the present case was made after the instrument became due. Nevertheless, we hold it to be a material alteration. (*National Ulster Co. Bank* v. *Madden*, 114 N. Y. 280, 286; *Vance* v. *Lowther*, L. R. [1875] 1 Ex. 176; *New Rochelle Securities Co.* v. *International Thrift Society, Inc.*, 270 N. Y. 52; *Crawford* v. *West Side Bank*, 100 id. 50; *Isaacs* v. *Van Hoose*, 171 La. 676; 131 S. 845.) In those cases the dates of checks or demand notes were changed so that they became payable at a future date. In other words, instruments which were due were extended. Such is the present case.

It must be borne in mind that the Negotiable Instruments Law recognizes and provides two separate and distinct defenses, either of which may grow out of an extension or change in time of payment. In one case the extension constitutes a material alteration which avoids the instruments as to all the parties who have not assented. (Neg. Inst. Law, § 205 [Cal. Civ. Code, 1933, § 3205].) In the other case, only persons secondarily liable are discharged. (Neg. Inst. Law, § 201 [Cal. Civ. Code, 1933, § 3201].) These defenses are recognized as separate and distinct in *Manufacturers Trust Co.* v. *Steinhardt* (*supra*). It was there held that the defendant-indorser was released by the alteration, viz., the change in time of payment, while the question of whether the defendant-indorser was also discharged, under section 201, was left open. The first question was not considered in *Mortgage Guarantee Co.* v. *Chotiner* (*supra*), relied on by plaintiff.

Indeed, when Mr. and Mrs. Georges indorsed the note and became liable thereon, and the date of payment was extended for three years, it became an entirely different obligation. By the plaintiff's act and operation of law, he accepted Mr. and Mrs. Georges as primary debtors and the defendants as sureties.

Before concluding — the defendants say the plaintiff cannot maintain this action because it is contrary to the public policy of this State. They rely upon sections 1083-a and 1083-b of the Civil Practice Act, our so-called Moratorium Law. Admitting that these sections declare the public policy of this State, they apply only in actions on an indebtedness secured by a mortgage upon property in this State. (*Provident Savings Bank & Trust Co.* v. *Steinmetz*, 270 N. Y. 129.)

Holding as we do that the extension was given for consideration and, therefore, valid; that it having been given without the defendants' knowledge or consent, they were released as sureties; and that, it being a material alteration, also exonerated the defendants, judgment is awarded dismissing the complaint, with costs.