ENGLISH TRANSCONTINENTAL, LTD., et al., Plaintiffs, *v.* PUEBLA TRAMWAY, LIGHT AND POWER COMPANY, Defendant.

Supreme Court, Special Term, New York County, March 25, 1946.

482

*Scribner & Miller* for plaintiffs.

*Reid & Priest* for defendant.

SHIENTAG, J. The motion is by the plaintiffs for summary judgment. The action is upon matured interest coupons on bonds issued by the defendant, a Canadian corporation, secured by property in Mexico and South America and payable (as are the bonds themselves) in a stated amount of English pounds in London or dollars in Canada or francs in Brussels or Basle or marks in Berlin, at the holders' option. The underlying bonds purport to be " 50 year gold bonds ". Obviously, the purpose of the draftsman of the language of these interest coupons and of the bonds themselves was to protect the holder against depreciation in any of the several currencies in which the obligation was payable.

The first defense is that the public policy of the United States stands in the way of the plaintiffs' demand. The substance of the defense is that the United States Gold Clause Resolution (U. S. Code, tit. 31, § 463) or its underlying policy applies and forbids the action here, which is to recover the dollar equivalent of the Swiss francs mentioned in the interest coupons.

The Gold Clause Resolution does not by its terms apply. The joint resolution is clear and unambiguous. By its very terms it purports to be applicable only to obligations payable " in money of the United States " and the obligation here sued on is carefully made payable in several currencies except money of the United States. In no case has this Gold Clause Resolution been applied to obligations payable entirely in foreign currencies and in places outside of the United States (*Guaranty Trust Co.* v. *Henwood,* 307 U. S. 247; *Bethlehem Co.* v. *Zurich Ins. Co.,* 307 U. S. 265, 266; see, also, Nussbaum on Comparative and International Aspects of American Gold Clause Abrogation, 44 Yale L. J. 53, 83). It might well be that Congress could have made the Gold Clause Resolution applicable whenever in the United States payment of any obligation is sought in United States dollars, but the existing resolution does not do so either in its text or in its legislative history or in its judicial interpretation.

The defendant further asserts that the coupons sued on or, rather, the " major amount " of them, were purchased by the plaintiffs' London agents from two banks in London which had received the coupons for collection upon maturity; that the depositors of the coupons had received payment in Canadian dollars but that the banks, instead of presenting the coupons for payment, had sold or transferred them to the plaintiffs. The defendant asserts that such " sale or transfer " was made without the knowledge, consent or authority of the depositors of the coupons. The defendant goes on to allege that some arrangement existed between the plaintiffs and the depositary banks for the plaintiffs to pay to the banks any moneys collected over and above the amounts involved in Canadian money for the banks to distribute pro rata among the depositors. The defendant further asserts that the plaintiffs obtained possession of the coupons knowing that a " sale or other disposition " (other than presentation for payment) of the coupons by the depositary banks was unauthorized and was accomplished without the consent of the depositors.

Defendant argues that upon the foregoing allegations the plaintiffs are not holders in due course. That, however, under the circumstances of this case, is entirely beside the issue. It would be necessary to determine whether the plaintiffs are holders in due course if the defendant had defenses which it might have presented against the transferors or the original holders. Actually, the defendant has no defense of that nature; its only plea must be that as between the depositors and the

plaintiffs some infirmity appears. The defense that plaintiffs are not holders in due course has no validity unless it can be made to appear that the plaintiffs have no title to the coupons.

The defendant's affidavits state that the bonds in question were, during the period now in issue, in Montreal rather than in London. Apparently one of the war measures taken in England was to assemble and send to Canada all securities held in England. In any event, the defendant sets forth in its affidavits that bonds of the defendant owned by resident Englishmen and left with the Westminster Bank and Midland Bank, both of London, England, were sent to Montreal. It does not appear where the coupons from these bonds were physically when they were acquired by the plaintiffs. All that does appear is that defendant had an investigation made in England by a firm known as Binder, Hamlyn & Co. in order to determine the circumstances. The best that the defendant is able to say is that it " appears " that some owners of the bonds in London who deposited the coupons did not know that the coupons were sold or transferred rather than presented for payment. There is a letter from one of them so stating. Binder, Hamlyn & Co. are said to be confident that none of the coupon holders knew what had happened or were aware of any arrangement by which they were to share in any further proceeds.

In order to sustain the defense, it would be necessary to hold that when in England a coupon is delivered to a bank for collection the bank is authorized only to present the coupon for payment and that, in effect, a bank would commit a conversion if it sold the coupons under the circumstances in which the coupon owner might conceivably receive an additional sum of money. No satisfactory authority from any jurisdiction is cited either way on the point. But it is difficult to conceive that action of the kind which was here taken is outside the implied authority of the depositary bank (*Marine Trust Co.* v. *Lauria,* 213 App. Div. 64, affd. 244 N. Y. 577; *Carson* v. *Federal Reserve Bank,* 254 N. Y. 218, 237–238). There is no suggestion that the British depositary banks received any specific instructions. The only question is whether one can infer from all the circumstances that the only authority of the bank was to present the coupon for payment. There is nothing, for example, to show that any of the coupon holders wanted payment in Canadian dollars, and not otherwise. No affidavits as to banking practice were supplied by the defendant.

It may be that the group of bondholders who accepted payment in Canadian currency have some equities as against the

bondholders whose interest will be paid in the United States dollar equivalent of Swiss francs. The original coupon owners may have some claims against the depositary banks, particularly if it is true that the plaintiffs took the coupons under an obligation to account to the banks so that the excess proceeds might be apportioned. But all of these equities and issues as to ultimate rights are not those in which this defendant has any interest. The adjudication of rights as between the plaintiffs, the original coupon owners, and the depositary banks, is not any concern of this defendant. Its obligation is expressed in the indenture. It must pay interest as promised and in the manner promised to anyone holding title to the coupons. There is nothing in the affidavits which would justify the conclusion that plaintiffs do not hold the legal title or represent the legal owners; on the contrary, the facts disclosed clearly indicate that plaintiffs have or represent the title (*Adamson* v. *Adamson*, 251 App. Div. 187; *Rogers* v. *Squires*, 98 N. Y. 49, 53; *Sullivan* v. *Bonesteel*, 79 N. Y. 631.)

The plaintiffs are entitled to the dollar value of the amount of Swiss francs due them on the coupons maturing July 1, 1944, and January 1, 1945 (*Hoppe* v. *Russo-Asiatic Bank*, 235 N. Y. 37; *Sokoloff* v. *National City Bank*, 250 N. Y. 69, 82; *Parker* v. *Hoppe*, 257 N. Y. 333, 341). The affidavits on behalf of the plaintiffs set forth that on both those dates the Swiss franc was worth 23.35 cents in New York. That is in no way disputed by the defendant, and it would therefore serve no useful purpose to order an assessment of damages.

The plaintiffs' motion for summary judgment is granted in accordance with the foregoing determination. Settle order, which shall provide for the entry of a judgment with a stay of execution of thirty days.